Jordan C. Bledsoe (Utah Bar #15545)
jordan.bledsoe@foley.com
Charles D. Morris (Utah Bar #18058)
charlie.morris@foley.com
Nicholas D. Sauer (Utah Bar #19676)
nick.sauer@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8921

*Attorneys for Ciox Health, LLC,*
   *now known as Datavant, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MARY MAYO, individually and on behalf of all similarly situated persons; and ANGELA MICKLOS, individually and on behalf of all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> CIOX HEALTH, LLC, a Georgia limited liability company, now known as DATAVANT, LLC, <br><br> Defendant. | **DEFENDANT CIOX HEALTH, LLC, NOW KNOWN AS DATAVANT, LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** <br><br> Case No. 2:25-cv-00285-HCN-DAO <br><br><br> The Honorable Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Ciox Health, LLC, now

known as Datavant, LLC ("Datavant"), hereby provides this supplemental brief in support of its

Partial Motion to Dismiss Plaintiffs Mary Mayo and Angela Micklos' (together, "Plaintiffs")

Amended Complaint.

4909-0327-0551.11

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ...............................................................................................................1

BACKGROUND AND PROCEDURAL POSTURE ........................................................2

ARGUMENT .....................................................................................................................3

    I.       The Utah Medical Records Act Creates No Private Right of Action. .....................3

          A.      Utah Law Requires Clear Legislative Authorization for Private Enforcement. ................................................................................................3

          B.      The Act's Text and Structure Contain No Private Right of Action. ............5

          C.      The Act's Fee-Reduction, Waiver, and Penalty Provisions Do Not Create a Cause of Action. .......................................................................6

          D.      The Act's Regulatory Design and Recent Amendments Confirm That the Legislature Did Not Authorize Private Suits. ...............................7

          E.      The Absence of a Private Right of Action Does Not Make the Act Unenforceable. ..................................................................................8

    II.      Because the Act Creates No Private Right of Action, Plaintiffs Cannot Enforce It Through Other Claims. .........................................................................9

          A.      Every Remaining Claim Is Derivative of the Alleged Statutory Violation. ..................................................................................................9

          B.      Plaintiffs Cannot Convert the Act's Requirements into Common-Law Duties. ...............................................................................................9

          C.      Plaintiffs' Negligence-Based Claims Also Fail Under the Economic Loss Doctrine. ......................................................................10

          D.      Plaintiffs' Conversion and Unjust-Enrichment Claims Cannot Supply an Indirect Remedy. ......................................................................12

          E.      Plaintiffs Cannot Use the UCSPA to Create a Private Remedy the Legislature Withheld. ...........................................................................13

CONCLUSION..................................................................................................................14

i

## TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Towers Owners Ass'n v. CCI Mech., Inc.* 930 P.2d 1182 (Utah 1996) ................................. 11

*Bleazard v. City of Erda* 2024 UT 17, 552 P.3d 183 ................................................................. 4, 5

*Buckner v. Kennard* 2004 UT 78, 99 P.3d 842 ..................................................................... 3, 4, 8

*Carlie v. Morgan,* 922 P.2d 1, 6-7 (Utah 1996) .......................................................................... 14

*Colosimo v. Gateway Community Church,* 2018 UT 26, ¶¶ 1, 41-52, 424 P.3d 866 ................... 10

*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC* 2009 UT 65, 221 P.3d 234 .......................................................................................................... 11

*Fell v. Alco Capital* Group LLC 2023 UT App 127, ¶¶ 15–19, 538 P.3d 1249 ........................... 13

*Gordon v. Nostrom* 2024 UT 18, 552 P.3d 200 .................................................................... passim

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.* 2018 UT 61, 435 P.3d 193 .......................... 11

*Kirkham v. Widdison* 2019 UT App 97, 447 P.3d 89 .................................................................. 12

*Machan v. UNUM Life Ins. Co. of Am.* 2005 UT 37, 116 P.3d 342 ................................... 3, 4, 6, 7

*Miller v. Weaver* 2003 UT 12, 66 P.3d 592 ............................................................................ 4, 6, 7

*Reighard v. Yates* 2012 UT 45, 285 P.3d 1168 ........................................................................... 11

*Scholzen v. Scholzen Prods. Co.* No. 4:20-cv-00019-DN-PK, 2020 WL 7630801 (D. Utah Dec. 22, 2020) ................................................................................................................................... 12

Statutes

Utah Code § 78B-5-618 ........................................................................................................ passim

Rules

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 1

4909-0327-0551.11

**<u>INTRODUCTION</u>**

At the February 24 hearing on Datavant's Partial Motion to Dismiss (the "Motion"), the Court identified, *sua sponte*, a threshold issue: Does the Utah Medical Records Act, Utah Code § 78B-5-618, create a private right of action? It does not. With that answer, all of Plaintiffs' claims fail as a matter of law.[1]

Plaintiffs' claims rest entirely on the premise that noncompliance with the Act can be privately enforced. They assert that Datavant overcharged for medical records, missed production deadlines, failed to waive or reduce fees, and withheld statutory penalties.[2] But each claim arises solely from the Act's requirements. If the statute does not authorize private enforcement—and it does not—Plaintiffs cannot achieve that result by rebranding statutory violations as common-law torts, equitable theories, or a UCSPA claim.

Utah law is clear: a private right of action exists only if the Legislature clearly created one. To determine that, courts begin with the statute's text and structure. If those do not grant private enforcement, courts will neither infer one nor allow indirect enforcement through other causes of action.

The Act's text is silent on private lawsuits. It lays out detailed rules for producing medical records, including timing, format, permissible fees, and financial adjustments for missed deadlines, but says nothing about who may sue to enforce them. It names no plaintiff, imposes no civil liability, and offers no judicial remedy.

---

[1] All terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] While Datavant disputes many of the factual allegations in the Amended Complaint, they are assumed to be true solely for purposes of its Motion under Rule 12(b)(6).

Controlling Utah precedent treats that silence as dispositive. Courts do not infer private causes of action from regulatory duties or remedial provisions. Where the Legislature regulates conduct without authorizing private litigation, enforcement is left to the mechanisms the Legislature selected—not to judicial creation of new causes of action.

Plaintiffs identify no independent common-law duty that governs medical-record production apart from the Act. Letting them proceed would transform a regulatory statute into a private damages regime that the Legislature never approved. This Court should reject that outcome and dismiss the Amended Complaint in full.

## **BACKGROUND AND PROCEDURAL POSTURE**

Plaintiffs' Amended Complaint challenges Datavant's handling of requests for medical records and payment-and-balance information under the Utah Medical Records Act, Utah Code § 78B-5-618. *See* Am. Compl. ¶¶ 6, 17–29, ECF No. 26. The Act regulates how health-care providers and certain third-party services respond to such requests. Among other things, it addresses the format in which records must be produced, the fees that may be charged, and certain adjustments or penalties that apply if statutory deadlines are missed. *See id.* ¶¶ 17–27.

Plaintiffs allege that Datavant failed to comply with several aspects of that statutory scheme. Specifically, they contend that Datavant charged more than the Act permits, failed to timely produce records or payment-and-balance information, failed to waive or reduce fees in some circumstances, and failed to credit or pay statutory penalties. *See id.* ¶¶ 38–46, 52–61, 62–70, 108. Based on those allegations, Plaintiffs assert claims for conversion, unjust enrichment, negligence, gross negligence, and violations of the UCSPA. *See id.* ¶¶ 83–110.

None of those claims arises from an independent common-law duty governing the production of medical records. Instead, each rests on the premise that Datavant violated the Act and that those alleged violations may be enforced through private litigation. *See id.* ¶¶ 85, 90, 98, 102, 105, 108; *see also* Def.'s Partial Mot. to Dismiss 1–3, 5–11, ECF No. 28. Datavant moved to dismiss those claims on multiple grounds. ECF No. 28. At the hearing on that motion, the Court raised, *sua sponte*, the threshold question of whether the Act authorizes private enforcement and requested supplemental briefing on that issue. If the Act creates no private right of action, Plaintiffs cannot enforce it through this suit—whether directly under the Act or indirectly through other causes of action.

The Court therefore must decide whether the Act authorizes private enforcement.

## ARGUMENT

That question—and Plaintiffs' remaining claims—can be resolved in two steps. *First*, the Utah Medical Records Act creates no private right of action. *Second*, because every remaining claim depends on enforcing that statute, Plaintiffs cannot obtain indirectly—through tort, equity, or the UCSPA—a private remedy the Legislature did not authorize.

## I.    The Utah Medical Records Act Creates No Private Right of Action.

### A.    Utah Law Requires Clear Legislative Authorization for Private Enforcement.

In Utah, "whether a particular statute creates a private right of action is a question of statutory interpretation." *Buckner v. Kennard*, 2004 UT 78, ¶ 40, 99 P.3d 842. Courts therefore "look first to the plain language of the statute for an express indication that a private right of action was intended." *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 24, 116 P.3d 342. "Such an indication is made clear by 'explicit language' and does not 'require anyone to add

3

language or make inferences to impart the full meaning of the statute.'" *Gordon v. Nostrom,* 2024 UT 18, ¶ 18, 552 P.3d 200 (quoting *Miller v. Weaver,* 2003 UT 12, ¶ 21, 66 P.3d 592).

Utah courts are reluctant to infer private rights of action. *See Gordon,* 2024 UT 18, ¶ 19. To the contrary, the Utah Supreme Court has emphasized that "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner,* 2004 UT 78, ¶ 43; *accord Bleazard v. City of Erda,* 2024 UT 17, ¶ 47, 552 P.3d 183. And when a plaintiff seeks to enforce a statute through litigation, the plaintiff must show both that the Legislature authorized private enforcement and that the plaintiff falls within the class of persons permitted to sue. *Bleazard,* 2024 UT 17, ¶¶ 37, 43; *Gordon v. Nostrom,* 2024 UT 18, ¶¶ 12–14, 552 P.3d 200.

The Utah Supreme Court's decisions in *Miller* and *Machan* illustrate how strictly Utah applies those principles. In *Miller,* the Utah Supreme Court considered a statute requiring students or other plaintiffs to file a written complaint with the local school board and wait before bringing a "civil action" relating to a teacher's professional competence, performance, discipline, or ethical conduct. 2003 UT 12, ¶¶ 18–19. The Court held that the statute was a "purely procedural" staying provision, not a source of a new private right of action. *Id.* ¶¶ 18–20. To read one into the statute, the Court explained, would require courts to "infer language and meaning that does not appear on the face of the statute." *Id.* ¶ 19. In *Machan,* the Court likewise refused to infer a private right of action from a statute requiring insurers to timely pay claims, reiterating that courts "look first to the plain language of the statute for an express indication that a private right of action was intended." 2005 UT 37, ¶ 24.

*Bleazard* and *Gordon* confirm the same point in the context of modern standing and remedial arguments. In *Bleazard,* landowners sought declaratory relief challenging a city's

4

incorporation based solely on alleged violations of Utah's incorporation statutes. 2024 UT 17, ¶¶ 1–3, 37–38, 552 P.3d 183. The Utah Supreme Court held the claim was non-justiciable because the plaintiffs had identified no private right of action authorizing them to enforce the statutory scheme and therefore lacked a legally protectible interest in the controversy. *Id.* ¶¶ 37–38, 44, 56. And in *Gordon*, the Court held that GRAMA's injunction provision did not create a private right of action. 2024 UT 18, ¶¶ 17, 21–24, 552 P.3d 200. The Court explained that the provision merely supplied a remedy, while GRAMA's separate judicial-review provisions showed that the Legislature knew how to authorize suit when it intended to do so. *Id.* ¶¶ 20–24.

In short, absent clear statutory authorization for private enforcement, Utah courts will not supply it.

**B.      The Act's Text and Structure Contain No Private Right of Action.**

The Act contains no language authorizing a private lawsuit. It regulates the production of medical records and payment-and-balance information through detailed rules governing timing, format, fees, and certain financial adjustments when deadlines are missed. *See* Utah Code § 78B-5-618(4)–(13). But it does not say that a patient or requester may sue to enforce those requirements.

That omission is dispositive. The Act identifies no plaintiff, creates no civil liability, and provides no judicial remedy. It prescribes operational rules governing who may request records, when records must be produced, what fees may be charged, how electronic records must be delivered, and how certain reductions or penalties apply if deadlines are missed. *Id.* Although the Legislature carefully specified those duties and consequences, it did not authorize private enforcement.

If the statute in *Miller* did not create a private right of action even though it referred to "civil action[s]," this Act certainly does not. 2003 UT 12, ¶¶ 18–21. And if the statute in *Machan* did not create one despite imposing a legal duty to timely pay claims, the Act's detailed regulation of record production does not create one either. 2005 UT 37, ¶¶ 24–25. The Act regulates entities responding to medical-record requests, but it does not authorize patients or requesters to sue them.

Because the Act creates no private right of action, Plaintiffs cannot use alleged violations of the Act as the basis for their claims.

### C.     The Act's Fee-Reduction, Waiver, and Penalty Provisions Do Not Create a Cause of Action.

Plaintiffs may argue that the Act's fee-reduction, waiver, and penalty provisions imply private enforcement. Utah law forecloses that argument. A statutory remedy does not itself create a right of action.

The Utah Supreme Court made that clear in *Gordon*. There, the plaintiff argued that GRAMA's injunction provision created a private right to sue for prospective relief. 2024 UT 18, ¶ 17. The court rejected that argument, explaining that the provision "does not create a private right of action but merely affords a particular remedy if a party that already has a private right of action prevails." *Id.* ¶ 21. The Court also found it significant that GRAMA expressly authorized judicial review elsewhere, confirming that the Legislature knew how to create a right to sue when it intended to do so. *Id.* ¶¶ 20–24.

The same reasoning applies here. The Act prescribes certain consequences for noncompliance. It requires fee reductions or waivers in some circumstances. It also imposes a $50 penalty if payment-and-balance information is not provided within thirty days and an

additional $150 penalty if it is not provided within sixty days. Utah Code § 78B-5-618(6)(c).

And it directs how those amounts must be applied. *Id.* But those provisions say nothing about

who may sue, under what cause of action, or in what court.

In other words, the Act specifies what should happen if deadlines are missed; it does not

create a private lawsuit to compel those results. Because the Act's fee-reduction, waiver, and

penalty provisions provide only remedial consequences within the statutory scheme, they do not

authorize private enforcement. They therefore do not alter the Act's otherwise complete silence

on private suits.

> **D.      The Act's Regulatory Design and Recent Amendments Confirm That the Legislature Did Not Authorize Private Suits.**

The Act's broader structure points in the same direction. It contains features

characteristic of a regulatory compliance regime, not a private-litigation scheme. It requires

filings with the Division of Professional Licensing, directs DOPL to maintain a public index of

third-party services, and assigns state officials responsibility for certifying and publishing

inflation-adjusted fee limits. Utah Code § 78B-5-618(8)–(11). Those are administrative and

transparency measures, not hallmarks of a statute authorizing private damages suits.

Utah precedent treats that context as significant. In *Machan*, the Utah Supreme Court

declined to infer a private right of action in part because the statute appeared within a broader

scheme focused on insurance regulation and administrative oversight. 2005 UT 37, ¶¶ 26–28.

And in *Miller*, the Court found it significant that the statute operated within a disciplinary

framework, warning that implying a private cause of action would "override, by judicial fiat, a

system which the Legislature has at least tacitly, if not expressly, sanctioned." 2003 UT 12, ¶ 22,

66 P.3d 592 (cleaned up). The same is true here. The Act reflects a legislative choice to regulate

medical-record production through detailed statutory directives, administrative filings, public disclosures, and self-contained financial adjustments—not through private damages litigation.

The Legislature's recent amendments reinforce that conclusion. In 2024 and 2025, the Legislature revised the Act to expand and refine its provisions governing payment-and-balance information, penalties, and administrative requirements. Yet even while revisiting the statute in detail, it did not add any language authorizing private suits. That omission is telling. When the Legislature repeatedly amends a statute but does not create a civil cause of action, courts do not supply one on their own. *See Buckner v. Kennard*, 2004 UT 78, ¶¶ 49–50, 99 P.3d 842.

In short, the Act's design confirms what its text already shows: the Legislature regulated this field, but it did not authorize private enforcement.

### E.    The Absence of a Private Right of Action Does Not Make the Act Unenforceable.

The absence of a private right of action does not render the Act unenforceable. The Legislature may impose statutory duties without authorizing private damages suits, and when it does, enforcement occurs through the mechanisms the Legislature chose. *See Gordon*, 2024 UT 18, ¶ 13 ("[T]he legislature is entitled to designate, as it sees fit, how those requirements are to be enforced.") (cleaned up).

That principle applies here. The Act regulates medical-record production in detail and includes administrative and public-regulatory features, including filing requirements, public indexing, certified fee schedules, and self-executing fee reductions and penalty provisions. *See* Utah Code § 78B-5-618(6)–(11). But it does not authorize private litigation. That choice belongs to the Legislature, not the courts. The question before this Court is therefore not whether the Act matters, but whether the Legislature authorized private enforcement of it. It did not.

8

**II.   Because the Act Creates No Private Right of Action, Plaintiffs Cannot Enforce It Through Other Claims.**

**A.   Every Remaining Claim Is Derivative of the Alleged Statutory Violation.**

Plaintiffs' remaining claims all rest on the same premise: that Datavant violated the Utah Medical Records Act and that those alleged violations may be privately enforced. The Amended Complaint alleges that Datavant charged more than the Act permits, failed to timely produce records or payment-and-balance information, failed to provide records in the requested format, and failed to apply fee reductions or penalties required by the Act. *See* Am. Compl. ¶¶ 38–46, 52–61, 62–70, 108, ECF No. 26.

Each remaining cause of action simply repackages those same alleged statutory violations. The conversion claim alleges that Datavant wrongfully retained money because it violated the Act. *Id.* ¶ 85. The unjust-enrichment claim alleges that Datavant retained money it was not entitled to collect under the Act. *Id.* ¶ 98. The negligence and gross-negligence claims expressly rely on duties imposed "[u]nder Utah Code § 78B-5-618." *Id.* ¶¶ 102, 105. And the UCSPA claim likewise rests on the allegation that Datavant violated the Act's requirements governing timing, format, fees, and penalties. *Id.* ¶ 90.

In short, Plaintiffs do not allege an independent wrong that merely overlaps with the Act. They allege only violations of the Act, then attach different labels to them. If the Act creates no private right of action, Plaintiffs cannot obtain by indirection what the Legislature withheld directly.

**B.   Plaintiffs Cannot Convert the Act's Requirements into Common-Law Duties.**

Plaintiffs cannot manufacture common-law duties from a statute that creates no private right of action. Their negligence and gross-negligence claims expressly rely on duties imposed

"[u]nder Utah Code § 78B-5-618." Am. Compl. ¶ 102, ECF No. 26. More broadly, Plaintiffs identify no common-law rule governing the timing, format, pricing, or financial adjustments associated with medical-record production apart from the statute itself.

Utah law does not automatically convert statutory requirements into common-law tort duties. In *Colosimo v. Gateway Community Church*, the Utah Supreme Court considered whether a city sign ordinance created a tort duty after a teenager was electrocuted while trespassing on a church roof. 2018 UT 26, ¶¶ 1, 41–52, 424 P.3d 866. The Court held that the ordinance did not create a separate duty in tort because it did not explicitly create one, the plaintiff was not within the class the ordinance was intended to protect, and the ordinance's general public-safety purpose did not show an intent to protect trespassers from that injury. *Id.* ¶¶ 41–52. The Court emphasized that, before a statute or ordinance can be used to impose a tort duty, the plaintiff must show that it was intended to protect persons in the plaintiff's position from the type of harm alleged. *Id.* ¶¶ 45, 48, 51–52.

The same principle applies here. The Act regulates fees, deadlines, formats, and statutory adjustments for medical-record requests. Utah Code § 78B-5-618. It does not reflect a legislative judgment to protect against personal injury, property damage, or any other harm traditionally addressed by tort law. Nor does it indicate an intent to create common-law duties enforceable through negligence claims. Allowing Plaintiffs to recast the Act's requirements as negligence duties would expand the statute beyond the enforcement scheme the Legislature created.

Because Plaintiffs identify no common-law duty apart from the Act, their negligence and gross-negligence claims fail as a matter of law.

 **C.** **Plaintiffs' Negligence-Based Claims Also Fail Under the Economic Loss Doctrine.**

As the Court noted at the hearing, Plaintiffs' negligence-based claims independently fail under Utah's economic loss doctrine. Utah law recognizes that the doctrine has "two complementary yet distinct applications." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193. As relevant here, the Utah Supreme Court has explained that "the economic loss rule prevents recovery of economic damages within the scope of the parties' contract but allows for recovery of damages to other property or for bodily injury." *Reighard v. Yates*, 2012 UT 45, ¶ 3, 285 P.3d 1168. Likewise, "[a]bsent physical property damage [i.e., damage to other property,] or bodily injury, this doctrine prohibits recovery of economic losses." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 18, 221 P.3d 234 (quoting *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996)).

That is exactly this case. Plaintiffs seek only allegedly excessive fees, unpaid reductions, and statutory penalties. *See* Am. Compl. ¶¶ 69, 86, 92, 103, 109, ECF No. 26. They do not allege bodily injury, physical damage to other property, or any comparable tort harm. Their claimed losses are purely economic.

Nor do Plaintiffs identify any tort duty independent of the statute they seek to enforce. Their negligence theories expressly depend on Utah Code § 78B-5-618 to supply both the alleged duty and the measure of loss. *See id*. ¶ 102. Utah law does not permit that sort of repackaging. The economic loss rule exists to prevent precisely this kind of effort to blur the boundary between distinct remedial frameworks. *See HealthBanc*, 2018 UT 61, ¶ 16 ("This blurring of the line between tort and contract law is precisely what the economic loss rule is designed to prevent."). Just as Utah courts do not allow a party to recast overlapping contract

11

theories as tort claims, they cannot allow Plaintiffs to recast an alleged statutory violation as negligence where the only claimed injury is economic loss and no independent tort duty exists.

The economic loss doctrine therefore provides an additional and independent basis to dismiss Plaintiffs' negligence and gross-negligence claims.

### D.    Plaintiffs' Conversion and Unjust-Enrichment Claims Cannot Supply an Indirect Remedy.

Plaintiffs cannot use conversion or unjust enrichment to obtain a private remedy the Act withholds. Both claims depend on the same alleged statutory violations, and neither supplies an independent basis for relief.

**Conversion.** Plaintiffs allege that Datavant wrongfully retained money that should have been reduced, refunded, or paid under the Act. *See* Am. Compl. ¶¶ 84–87, ECF No. 26. But under Utah law, conversion requires "an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Kirkham v. Widdison*, 2019 UT App 97, ¶ 24, 447 P.3d 89 (cleaned up). It does not lie to enforce a mere obligation to pay money. *See Scholzen v. Scholzen Prods. Co.*, No. 4:20-cv-00019-DN-PK, 2020 WL 7630801, at *2–3 (D. Utah Dec. 22, 2020). Plaintiffs do not allege that Datavant wrongfully took identifiable personal property. They allege only that Datavant retained money they believe should have been treated differently under the statute. That is not conversion.

**Unjust Enrichment.** Plaintiffs' unjust enrichment claim likewise rests entirely on the premise that Datavant "received and retained" money in violation of the Act. Am. Compl. ¶ 98. But Plaintiffs identify no independent equitable principle governing the price, format, or timing of medical-record production apart from the statute itself. Their theory is simply that Datavant

retained more than the Act allows. That is just another attempt to enforce the statute indirectly through a different label.

Neither claim survives. Conversion fails because Plaintiffs do not allege interference with identifiable property. And unjust enrichment fails because it depends entirely on the statutory scheme the Legislature chose not to make privately enforceable.

### E.    Plaintiffs Cannot Use the UCSPA to Create a Private Remedy the Legislature Withheld.

Plaintiffs cannot use the UCSPA to obtain a private remedy the Legislature chose not to provide. Plaintiffs' UCSPA claim fails for that reason. It is simply an indirect attempt to enforce the Act through a different label, and Utah courts have rejected that tactic.

In *Fell v. Alco Capital Group LLC*, the Utah Court of Appeals held that a plaintiff could not use the UCSPA to obtain relief based solely on a violation of another statute that itself provided no private cause of action. 2023 UT App 127, ¶¶ 15–19, 538 P.3d 1249. The court explained that a statutory violation alone does not amount to a deceptive or unconscionable act under the UCSPA. *Id*. ¶¶ 30–33. Instead, the plaintiff must allege some independent deceptive conduct—such as an affirmative misrepresentation—beyond the alleged statutory violation. *Id.* at ¶¶ 30–37. The court therefore rejected an attempt to "shoehorn" a violation of a statute lacking a private right of action into a UCSPA claim or other state-law cause of action. *Id.* ¶ 19.

That reasoning applies here. Plaintiffs' UCSPA claim is based entirely on the allegation that Datavant violated the Act's requirements governing timing, format, fees, and penalties. *See* Am. Compl. ¶¶ 88–95, ECF No. 26. But Plaintiffs do not allege any independent misrepresentation, deceptive statement, or unconscionable conduct apart from those alleged

13

statutory violations. Their theory is simply that violating the Act is itself a UCSPA violation. Under *Fell*, that is not enough.

The Utah Supreme Court's decision in *Carlie v. Morgan* reinforces the point. There, the Court held that the UCSPA could not be used where the Legislature had enacted a more specific statute governing the conduct at issue. 922 P.2d 1, 6–7 (Utah 1996). The same is true here. The Act specifically governs the production of medical records, including deadlines, formats, fees, and adjustments for noncompliance. Plaintiffs cannot bypass that targeted statutory scheme by resorting to the more general UCSPA.

Because Plaintiffs allege no independent deceptive or unconscionable conduct, and because the Act—not the UCSPA—specifically governs the conduct they challenge, their UCSPA claim fails as a matter of law.

## CONCLUSION

The Utah Medical Records Act does not create a private right of action. Because every remaining claim depends on enforcing that statute, Plaintiffs cannot proceed on any of them. Their negligence-based claims also fail under the economic loss doctrine. The Court should therefore dismiss the Amended Complaint with prejudice.

DATED:  March 25, 2026                          FOLEY & LARDNER LLP


                                               */s/ Jordan C. Bledsoe*
                                               Jordan C. Bledsoe
                                               Charles D. Morris
                                               Nicholas D. Sauer

                                               *Attorneys for Defendant Ciox Health, LLC, now
                                                  known as Datavant, LLC*


14